**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Cecil Thompson** : | |
| **649 Second Avenue** : | |
| **Williamsport, PA 17701,** : | |
| : | **CIVIL ACTION** |
| : | |
| **Plaintiff,** : | **No.** |
| : | |
| v. : | **JURY TRIAL DEMANDED** |
| : | |
| **City of Williamsport** : | |
| **Bureau of Police** : | |
| **245 W. 4th Street** : | |
| **Williamsport, PA 17701,** : | |
| : | |
| **and** : | |
| : | |
| **Lycoming County** : | |
| **District Attorney's Office** : | |
| **48 W. 3rd Street** : | |
| **Williamsport, PA 17701,** : | |
| : | |
| **and** : | |
| : | |
| **P/O Jason P. Bolt** : | |
| **245 W. 4th Street** : | |
| **Williamsport, PA 17701,** : | |
| : | |
| **and** : | |
| : | |
| **Sherry Clark and Dayna Sierra** : | |
| **951 High Street** : | |
| **Williamsport, PA 17701,** : | |
| : | |
| **and** : | |
| : | |
| **Zaria Cooper** : | |
| **1201 Rural Avenue** : | |
| **Williamsport, PA 17701,** : | |
| : | |
| **and** : | |
| : | |
| **Rose View Center SNF, LLC,** : | |
| **indiv. and d/b/a Roseview Nursing and** : | |

| | |
|---|---|
| **Rehabilitation Center** | : |
| **1201 Rural Avenue** | : |
| **Williamsport, PA 17701,** | : |
| | : |
| **Defendants.** | : |
| | : |

# COMPLAINT
## Jurisdiction and Venue

1.      Jurisdiction over this cause of action is properly before this Court pursuant to 28 U.S.C. § 1331 as this civil action concerns a federal question or questions and arises under the Constitution and/or laws of the United States; Title VII of the 1964 Civil Rights Act; 28 U.S.C.§§ 1331, 1367 and 1343; 42 U.S.C. § 2000e et. seq.; and/or 42 U.S.C. § 1981.

2.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events giving rise to Plaintiff's claims(s) for violation(s) of the aforementioned statute(s) occurred in the Middle District of Pennsylvania, where all Defendant(s) herein reside and/or conduct business.

3.      Venue is also proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(c) in that the Defendant(s) have substantial business contacts within the Middle District of Pennsylvania.

## Parties

4.      Plaintiff Cecil Thompson is an adult individual and resident within the Middle District of Pennsylvania, and/or citizen of the Commonwealth of Pennsylvania, residing at 649 Second Avenue, Williamsport, PA 17701.

5.      Defendant City of Williamsport is a city of the first and/or second and/or third class under the laws of the Commonwealth of Pennsylvania (hereinafter Defendant City), and its police department is a law enforcement agency regularly conducting business at 245 W. 4th Street, Williamsport, PA 17701 and at any and all times relevant employed Defendant Jason P. Bolt *infra*, who at any and all times relevant herein was acting under the color of state law and wrongfully arrested and/or detained and/or incarcerated and/or prosecuted the Plaintiff for a crime that he did not commit.

6.      Defendant Lycoming County, and its district attorney's office, is a local Pennsylvania governmental agency of the first and/or second and/or third class under the laws of the Commonwealth of Pennsylvania, and/or is regularly conducting business at 48 W. 3rd Street, Williamsport, PA 17701 and at any and all times relevant employed Assistant District Attorney Michael B. Sullivan (hereinafter ADA Sullivan), the

prosecutor assigned to the Plaintiff's criminal case, and at any and all times relevant herein was acting under the color of state law and wrongfully arrested and/or detained and/or incarcerated and/or prosecuted the Plaintiff for a crime that he did not commit.

7.  Defendant P/O Jason P. Bolt (hereinafter Defendant Bolt) is an adult individual and resident within the Middle District of Pennsylvania, and/or citizen of the Commonwealth of Pennsylvania, regularly conducting business at 245 W. 4th Street, Williamsport, PA 17701 and at any and all times relevant herein was the police officer acting under the color of state law who wrongfully arrested and/or detained and/or incarcerated and/or prosecuted the Plaintiff for a crime that he did not commit.

8.  Defendant Sherry Clark (hereinafter Defendant Clark) is an adult individual and resident within the Middle District of Pennsylvania, and/or citizen of the Commonwealth of Pennsylvania, residing at 951 High Street, Williamsport, PA 17701.

9.  Defendant Dayna Sierra (hereinafter Defendant Sierra) is an adult individual and resident within the Middle District of Pennsylvania, and/or citizen of the Commonwealth of Pennsylvania, regularly residing at 951 High Street, Williamsport, PA 17701.

10. Defendant Zaria Cooper (hereinafter Defendant Cooper) is an adult individual and resident within the Middle District of Pennsylvania, and/or citizen of the Commonwealth of Pennsylvania, regularly residing at 951 High Street, Williamsport, PA 17701.

11. Defendant Rose View Center SNF, LLC, indiv. and d/b/a Roseview Nursing and Rehabilitation Center (hereinafter Defendant Rose View) is a Delaware limited liability company registered to do business in the Commonwealth of Pennsylvania, and regularly conducting business at 1201 Rural Avenue, Williamsport, PA 17701.

## Facts

12. Plaintiff(s) hereby incorporate averments 1 through 11 as though fully set forth herein at length.

13. Plaintiff was wrongfully arrested and/or detained on July 28, 2020 by Defendant Bolt, a police officer employed by Defendant City and/or Defendant Lycoming County, and then subsequently charged with five (5) felonies and eleven (11) misdemeanors by Defendant Lycoming County's district attorney's office, including but not limited to Burglary, Unlawful Restraint of a Minor, Terroristic Threats with Intent to Terrorize Another, Simple Assault and Possession of a Weapon.

14. On or about May 18, 2020 around 1:36 p.m., at 951 High Street in Williamsport, PA, Defendant Clark and Defendant Sierra arrived home from running Defendant Sierra noticed a tall black male, with a thin build, and wearing a light blue surgical mask and a

grey hoodie with black stripes and/or patch-work, watching them unload groceries, from behind a tree in the alleyway behind the family's shared double home.

15.     Defendant Sierra alerted her mother, Defendant Clark, about the man who was allegedly watching them unload groceries.

16.     While Defendant Sierra went next door with her husband, Defendant Clark was upstairs putting the groceries away when the same unknown individual knocked on the back door. At first, Defendant Clark's 10 year-old granddaughter, Jada, answered the door whereupon the intruder asked "Is Lisa home?" Defendant Clark's grandson, Christian Rivera, went to the door to see what was going on and again, the intruder asked to speak with "Lisa" whereupon Christian informed him that there is no one there by that name.

17.     Upon information and belief, the intruder then brandished a gun from his waistband and held it against Christian, telling him and his two (2) sisters (Jalyce, who was nine years old, and Jada, aged 10) to "get on the ground and be quiet" or he'd shoot them. Eventually, the intruder herded the three children upstairs to the bedroom where Defendant Clark was, and pointed the gun at Defendant Clark's head and reiterated to the four (4) individuals to sit down and be quiet, or he would kill them.

18.     Instead of listening to the intruder's demands, Defendant Clark pretended she was going to sit on the bed, and instead reached for a flashlight/billy club that she hid in her bedroom for protection, and struck the intruder in the same arm that was holding the gun. Defendant Clark repeatedly struck the intruder about his body with the flashlight/billy club, thereupon beginning a struggle, which brough the pair out into the hallway.

19.     The intruder then struck Defendant Clark in the head with the butt of his firearm, knocking her to the floor, whereupon she began to continuously beat the intruder about his lower body and/or legs. The intruder began stepping on Defendant Clark's legs and/or feet while she was still laying on the ground and was yelling at her to stop striking him, whereupon Defendant Clark regained her footing, and chased the intruder down the stairs, where he left handprint(s) and/or fingerprint(s) on a picture frame and/or his DNA on the flashlight/billy club and/or picture frame, and eventually made his way to the kitchen, where the struggle between he and Defendant Clark continued until the intruder was pushed out of the back door of the home.

20.     Defendant Clark called the police immediately after the door was locked behind the intruder, and the family gave their statements to police that same day, and the following day on May 19, 2020, at City Hall in Williamsport, PA.

21.     On or about May 21, 2020, Deputy Christopher Warden and Deputy Keely Whipple of the Lycoming County Sheriff's Department were driving east on High Street near Fourth Avenue in Williamsport, Pennsylvania, when they observed the Plaintiff

walking along the street wearing a black hooded sweatshirt, with grey stripes, and/or patchwork going down the sleeve (by contrast, the intruder from 951 High Street was allegedly wearing a grey hooded sweatshirt, with black stripes) and the Plaintiff was carrying a plastic grocery bag.

22. Deputy Warden and Deputy Whipple monitored the Plaintiff while they waited for a third deputy, Deputy Erika Heath, to assist them in identifying the Plaintiff because he allegedly "fit the description" of the unknown male intruder who was in photos concurrently being distributed throughout the Williamsport police department in the aftermath of the aforementioned home invasion, even though Deputy Warden states verbatim, in the incident report, attached hereto and incorporated herein as Exhibit A, that "the photos I received are somewhat pixelated and it was hard to see any distinct facial features other than black glasses."

23. Deputy Warden also believed that the Plaintiff also appeared to be younger than the individual in the photos from the day of the home invasion, and despite that belief and the insufficient photograph in Exhibit A, Deputy Warden, Deputy Whipple and Deputy Heath approached the Plaintiff and asked him for his identification and explained it was simply because he was a black male, who fit a description, walking within the vicinity of the violent home invasion that took place a few days prior. The Plaintiff cooperated and expressed to the officers that he was only walking home from his shift at a nearby nursing home, Defendant Rose View.

24. At no point did any of the aforementioned three (3) police and/or sheriff deputies ask the Plaintiff about, and/or pursue a search warrant for, determining whether or not the Plaintiff bore what would have been multiple contusions and/or scars, about his body, from the beating which Defendant Clark rightfully wrought upon the intruder in her home.

25. Subsequently, on multiple occasions between May 21, 2020 and July 28, 2020, as further set forth *infra*, Defendants Clark and/or Sierra and members of their households and/or families, sent law enforcement officers at least five (5) stills of the Plaintiff walking by their home, because they believed that since the Plaintiff was a black male with a similar build, he must have been the same individual who broke into their home.

26. However, the Plaintiff regularly and innocently walked past the home of Defendants Clark and/or Sierra at 951 High Street because the residence on High Street is directly in between the location of his place of employment at Defendant Rose View, a nursing on Rural Avenue, and the Plaintiff's home on Second Avenue.

27. The Plaintiff regularly walked down High Street because it's a quicker route to and from his job at Defendant Rose View.

5

28. Subsequently, Defendant Bolt then contacted Defendant Cooper who worked in the HR department at the Plaintiff's place of employment, Defendant Rose View, on June 25, 2020, and showed her the picture Deputy Warden said was "pixelated," to which she misrepresented to Defendant Bolt, mistakenly or otherwise, that the man in the photo was the Plaintiff.

29. At no point in time did Defendant Bolt ask the Plaintiff, and/or pursue a search warrant, for the purposes of determining whether or not the Plaintiff bore what would have been multiple contusions and/or scars, about his body, from the beating which Defendant Clark rightfully wrought upon the intruder in her home.

30. At no point in time did Defendant Cooper or Defendant Rose View request of the Plaintiff if he was the person depicted in the pixelated photograph at issue, and/or request to observe his body to determine whether or not the Plaintiff bore what would have been multiple contusions and/or scars, about his body, from the beating which Defendant Clark rightfully wrought upon the intruder in her home.

31. At no point in time did any Defendant hereto conduct any investigation, whatsoever, as to the Plaintiff's whereabout on the date and time of the home invasion, as aforementioned, and/or whether or not he bore any contusions and/or scars, about his body, from the beating which Defendant Clark rightfully wrought upon the intruder in her home.

32. Accordingly, on July 28, 2020, the Plaintiff was arrested at Defendant Rose View, by Defendant Bolt and/or Defnedant City of Williamsport's police department, without probable cause and/or in coordination and cooperation with Defendant Rose View and/or Defendant Cooper, and that same day a search warrant for his home was executed in hopes of finding the clothing matching that of the intruder and/or the firearm that was used in the home invasion, neither of which were located.

33. On or about July 28, 2020, the Plaintiff also consented to a buccal swab, which was sent to the lab to be tested with the DNA lifted from the crime scene, and the aforementioned criminal charges were filed against him by Defendant Lycoming County's district attorney office, which also utterly failed to perform any investigation regarding the Plaintiff's whereabouts as of the date of the home invasion and/or whether or not he bore any contusions and/or scars, about his body, from the beating which Defendant Clark rightfully wrought upon the intruder in her home.

34. Following his arrest, Defendant Lycoming County's district attorney's office pursued an egregiously unreasonable bail, which was set at Seven Hundred and Fifty Thousand Dollars ($750,000), and which the Plaintiff was unable to make because he made $10.88 per hour at the time at Defendant Rose View.

35.   The Plaintiff was in prison for at least four (4) months, during the unrelenting virulence of the Covid-19 pandemic throughout county jails in Pennsylvania, before his able public defender, Howard Gold, Esq., managed to get the Plaintiff's bail reduced to Twenty-Five Thousand Dollars ($25,000).

36.   On or about September 29, 2020, it was determined by two (2) separate examiners, employees and/or agents of the Pennsylvania State Police, that the DNA and/or fingerprint samples taken from the Plaintiff **did not** match the DNA and/or handprints and/or fingerprints that were lifted from the aforementioned picture frame and/or flashlight/billy club with which the intruder came into multiple contacts during the aforementioned home invasion, a beating which said intruder most certainly deserved.

37.   Nonetheless, Defendant Lycoming County's district attorney office did not provide this exculpatory evidence to the Plaintiff's public defendant until about November 20, 2020, sitting on it for approximately two (2) months, per the DNA exclusion report, a true and correct copy of which is attached hereto and incorporated herein as Exhibit B.

38.   In fact, during the exact time the aforementioned home invasion was taking place, the Plaintiff was playing XBox online at his home, according to the XBox affidavit from an employee at Xbox, a true and correct copy of which is attached hereto and incorporated herein as Exhibit C.

39.   Despite the DNA exoneration in Exhibit B, which completely absolves the Plaintiff of any culpability for the home invasion as aforementioned, as of the date of this filing (July 25, 2022) the Defendants are continuing to egregiously and unlawfully prosecute the Plaintiff herein, and upon information and belief have done so in response to a Notice of Intent to pursue a civil action against them on or about December 3, 2020 by undersigned counsel, a true and correct copy of which is attached hereto and incorporated herein as Exhibit D.

40.   As a consequence of the actions and/or inactions of the Defendants as set forth at length *supra*, Plaintiff has suffered unnecessary and injust incarceration, for a significant period of time, and/or exposure to and/or the virulent threat of exposure to the Covid 19 virus in the very early and particularly heated stage of the pandemic, pain, suffering, embarrassment, worry, fright, humiliation, loss of life's pleasures, lost wages, depression, disability, mental disturbances, extreme emotional distress, fear and/or post traumatic stress disorder, and/or other damages remaining to be determined, which Plaintiff reserves the right to supplement herein should further evidence in this regard be discovered, and Plaintiff demands a jury for trial of the same.

**COUNT I**
**PLAINTIFF v. DEFENDANTS**
**42 U.S.C. § 1983**

41.     Plaintiff hereby incorporates averments 1 through 40 as though fully set forth herein at length.

42.     All Defendants are "persons" within the meaning of § 1983, in that at all times material hereto they were acting under the color of state law as a political subdivision of the Commonwealth of Pennsylvania, and/or a representative thereof.

43.     Defendants' actions and/or inactions were taken (or refrained) under color of state law, are state actions/inactions under 42 U.S.C. § 1983, and have deprived Plaintiff of his rights, privileges, and/or immunities secured by the Constitution and laws of the United States, including his right to substantive and/or procedural Due Process.

44.     Defendants' actions/inactions have violated, and unless enjoined will continue to violate, Plaintiff's constitutionally protected rights of substantive and/or procedural Due Process and/or Equal Protection rights.

45.     Upon information and belief, the aforesaid actions/inactions of Defendants were taken intentionally, willfully, and/or with deliberate indifference to, and/or reckless disregard for, the rights secured to Plaintiff. Defendants' actions as stated herein denied Plaintiff equal protection of the law in violation of the United States Constitution, the 1st Amendment, the 4th Amendment, the 5th Amendment, the 8th Amendment, the Due Process Clause of the 14th Amendment, the Equal Protection Clause of the 14th Amendment, the Substantive Due Process rights of the 14th Amendment, and/or 42 U.S.C. § 1983.

46.     Plaintiff is informed and believes as set forth *supra*, and therefore alleges herein, that at all times relevant, Defendants City of Williamsport's Police Department and/or Lycoming County's district attorney's office and/or their respective agents, with deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions as set forth *supra*, all pursuant to a policy/policies, procedure(s), and/or custom(s) held and/or regularly enacted by said Defendants.

47.     The actions and/or inactions, and/or policy/policies, procedure(s), and/or custom(s), of Defendants City of Williamsport's Police Department and/or Lycoming County's district attorney's office were known and/or should have been known to the policy makers responsible for each respective agency, and occurred nonetheless with deliberate indifference to the constitutional violations set forth above, and/or to the strong likelihood that the constitutional rights would be violated as a result of their individual and/or collective customs, policies and/or procedures and/or the malicious prosecution of the Plaintiff herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, in an amount in excess of $1,000,000 (One Million Dollars), as follows:

(a) Declaratory judgment in the nature of an order declaring that the actions of Defendants violate 42 U.S.C. § 1983;

(b) Injunctive relief, enjoining Defendants from further such violations;

(c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

## COUNT II
## PLAINTIFF v. DEFENDANTS CITY OF WILLIAMSPORT AND LYCOMING COUNTY
## 42 U.S.C. § 1983 - MONELL

48. Plaintiff hereby incorporates averments 1 through 47 as though fully set forth herein at length.

49. Defendants City of Williamsport and Lycoming County are "persons" within the meaning of § 1983, in that at all times material hereto they were acting under the color of state law as a political subdivision of the Commonwealth of Pennsylvania, or a representative thereof.

50. Defendants City of Williamsport and Lycoming County's actions and/or inactions were exercised under the color of state law, constituting state actions/inactions under 42 U.S.C. § 1983, and have deprived Plaintiff of his rights, privileges, and/or immunities as secured by the Constitution and laws of the United States, including his right to Due Process.

51. Defendants City of Williamsport and Lycoming County's actions and/or inactions have violated, and unless enjoined will continue to violate, Plaintiff's constitutionally protected rights of substantive and procedural Due Process and Equal Protection.

52. Upon information and belief, the aforesaid actions/inactions of Defendants were taken intentionally, willfully, and/or with deliberate indifference to, and/or reckless disregard for, the rights secured to Plaintiff. Defendants' actions as stated herein denied Plaintiff equal protection of the law in violation of the United States Constitution, the 1st

Amendment, the 4th Amendment, the 5th Amendment, the 8th Amendment, the Due Process Clause of the 14th Amendment, the Equal Protection Clause of the 14th Amendment, the Substantive Due Process rights of the 14th Amendment, and/or 42 U.S.C. § 1983.

53.    Plaintiff is informed and believes as set forth *supra*, and therefore alleges herein, that at all times relevant, the actions and/or inactions of Defendants City of Williamsport Police Department and Lycoming County's district attorney's office and their respective agents, with deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff, engaged in the unconstitutional conduct and omissions as set forth *supra*, all pursuant to a policy, procedure, or customs held by said Defendants.

54.    The actions and/or inactions of Defendants City of Williamsport Police Department and Lycoming County's district attorney's office were known or should have been known to the policy makers responsible for each respective agency, and occurred nonetheless with deliberate indifference to the constitutional violations set forth above, and/or to the strong likelihood that the constitutional rights would be violated as a result of their individual and/or collective customs, policies and/or procedures and/or the malicious prosecution of the Plaintiff herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, in an amount in excess of $1,000,000 (One Million Dollars), as follows:

(a) Declaratory judgment in the nature of an order declaring that the actions of Defendants violate 42 U.S.C. § 1983;

(b) Injunctive relief, enjoining Defendants from further such violations;

(c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

## COUNT III
## PLAINTIFF v. DEFENDANTS
## <u>FALSE ARREST AND/OR FALSE IMPRISONMENT</u>

55.    Plaintiff hereby incorporates averments 1 through 54 as though fully set forth herein at length.

56. Defendants' actions and/or inactions, as aforementioned, were intentionally conducted in order to intentionally confine the Plaintiff into the custody of Defendant Bolt, Defendant City of Williamsport Police Department, and/or the very fixed boundaries of the Defendant Lycoming County's jail.

57. Defendants' intentional actions and/or inactions directly and/or indirectly confined the Plaintiff within the custody of Defendant Bolt, Defendant City of Williamsport Police Department, and/or the very fixed boundaries of the Defendant Lycoming County's jail.

58. The Plaintiff was painfully conscious of the confinement and/or was egregiously harmed thereby, spending approximately four (4) months of his life in jail awaiting trial for a crime he did not commit, and if not for his excessive bail being reduced, he very well would still be incarcerated – as the Defendants egregiously perpetuate his prosecution to this very day, despite the exoneration afforded by Exhibit B.

59. Defendants Clark, Sierra, Cooper, Rose View, Bolt and/or Defendant City of Williamsport either knowingly provided false information to Defendant Lycoming County's district attorney's office, and/or knowingly provided incomplete, misleading information to Defendant Lycoming County's district attorney's office, which resulted in the detention of the Plaintiff. *See* Doby v. DeCrescenzo, 1996 U.S. Dist. LEXIS 13175 (E.D. Pa. 1996).

60. Defendant Lycoming County's district attorney's office knowingly provided incomplete, misleading information to the court and/or withheld exculpatory evidence from Plaintiff's defense attorney for an egregious period of time, and continue to hold a criminal prosecution over the head of the Plaintiff, despite the exonerating DNA analysis in Exhibit B.

61. The Plaintiff was unlawfully detained and/or prosecuted as a consequence of Defendants' actions and/or inactions, as further set forth at length, *supra.*

62. As a direct and proximate result of Defendants' conduct, Plaintiff herein suffered and/or continues to suffer from pain, suffering, agony, anxiety, mental anguish, depression, disability, mental disturbances, extreme emotional distress, embarrassment, humiliation, fear and/or post traumatic stress disorder, and Plaintiff demands a jury for trial of the same.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, in an amount in excess of $1,000,000 (One Million Dollars), plus such other relief as this Honorable Court deems appropriate.

## COUNT IV
## PLAINTIFF v. DEFENDANTS
## INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS

63. Plaintiff hereby incorporates averments 1 through 62 as though fully set forth herein at length.

64. Defendants' actions and/or inactions were conducted intentionally and/or recklessly, as set forth *supra*.

65. Defendants' actions and/or inactions were extreme and outrageous, as set forth *supra*.

66. Defendants' actions and/or inactions, as set forth *supra*, were so outrageous and extreme, in degree and in depraved degree, as to go beyond all possible bounds of decency tolerable in a civilized community – and it continues to this very day, given the pending criminal prosecution that still exists, despite Exhibit B.

67. The Plaintiff suffered severe emotional distress arising from *inter alia* his consequential exposure not only to the possibility and/or actuality of a Covid infection during his incarceration of approximately four (4) months, but also the possibility of spending the majority of his life in prison due to the severity of the crime at issue and the extent of his charges, had he been convicted.

68. The Plaintiff's emotional distress also included severe fright, horror, grief, shame humiliation, embarrassment, anger, chagrin, disappointment, and/or worry at the aforementioned repercussions of the Defendants' actions and/or inactions.

69. The Plaintiff's emotional distress in these regards was of such a degree of severity that no reasonable person could be expected to endure the same, and Defendants knew and/or were substantially certain that their aforementioned conduct during the initial investigation and/or trial about *inter alia* an alleged home invasion committed by the Plaintiff, a crime in which he was eventually exonerated of, was maliciously fabricated and/or was specifically designed to inflict severe emotional distress for the Plaintiff.

70. As a direct and proximate result of Defendants' conduct, Plaintiff herein suffered and/or continues to suffer from pain, suffering, agony, anxiety, mental anguish, depression, disability, mental disturbances, extreme emotional distress, embarrassment, humiliation, fear and/or post traumatic stress disorder, and Plaintiff demands a jury for trial of the same.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, in an amount in excess of $1,000,000 (One Million Dollars), plus such other relief as this Honorable Court deems appropriate.

### COUNT V
### PLAINTIFF v. DEFENDANTS
### RESTATEMENT (SECOND) OF TORTS §§ 653, 654
### MALICIOUS PROSECUTION

71. Plaintiff hereby incorporates averments 1 through 70 as though set forth fully herein at length.

72. On or about July 28, 2020, Defendants maliciously, and/or without probable cause therefor, caused the Plaintiff to be arrested and/or prosecuted and/or under a warrant issued by a Magistrate Judge, on charges of Burglary, three (3) counts of Unlawful Restraint of a Minor, Criminal Trespassing, Unlawful Restraint/Serious Bodily Injury, four (4) counts of Terroristic Threats with Intent to Terrorize Another, five (5) counts of Simple Assault, and Possession of a Weapon.

73. Before the commencement of this action, this charge was thoroughly investigated, revealing the fact that the Plaintiff's DNA was not found on any surface at the crime scene nor on the weapon used to relentlessly and righteously attack the intruder, yet this was only enough to merit a bail reduction for the Plaintiff to Twenty-Five Thousand Dollars ($25,000), which he posted on November 24, 2020, securing his own release no thanks to any honest efforts on the parts of the Defendants herein.

74. The only evidence the Defendants had against the Plaintiff was the egregiously defective witness identification as aforementioned by Defendants Cooper and/or Rose View and/or Defendants Clarke and/or Sierra, which is well-known as one of the least reliable forms of evidence, some and/or all of whom allegedly identified the Plaintiff by looking at a grainy, pixelated photo, that was indecipherable at best as to whom was depicted therein. *See* Exhibit A.

74. Furthermore, the Plaintiff's DNA and/or fingerprints were tested against the DNA and/or fingerprints found at the scene by two (2) separate examiners with the Pennsylvania State Police, both of which came to the same conclusion that the Plaintiff's DNA and/or fingerprints did not match the DNA and/or fingerprints that were found at the scene. *See* Exhibit B.

75. Not only has the Plaintiff been exonerated by DNA forensic testing, but his Xbox online records show that at the time the home invasion was taking place, he was at home playing Xbox from approximately 9:00 am until approximately 2:55 pm. *See* Exhibit C.

76. This evidence exonerating the Plaintiff is conclusively stronger than anything to the contrary in the possession of the Defendants, yet upon learning about the DNA exclusion, ADA Sullivan reduced the Plaintiff's bail instead of dropping the charges altogether and the criminal case continues to be prosecuted almost two (2) years later.

77. Moreover, ADA Sullivan and/or Defendant Lycoming County's district attorney's office informed the Plaintiff that if this immediate above captioned civil lawsuit was dropped, all criminal charges against Plaintiff would also be withdrawn, which goes to show the Defendants herein are actually well aware of the Plaintiff's innocence, and are more interested in covering their own culpability than in exercising the pursuit of truth, as they are obligated to do so by *inter alia* the Rules of Professional Conduct.

78. As a direct and proximate result of Defendants' conduct, Plaintiff herein suffered and/or continues to suffer from pain, suffering, agony, anxiety, mental anguish, depression, disability, mental disturbances, extreme emotional distress, embarrassment, humiliation, fear and/or post traumatic stress disorder, and Plaintiff demands a jury for trial of the same.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, in an amount in excess of $1,000,000 (One Million Dollars), plus such other relief as this Honorable Court deems appropriate.

**COUNT VI**
**ASSAULT**
**Plaintiff v. Defendant Bolt**

79. Plaintiff hereby incorporates averments 1 through 78 as though fully set forth herein at length.

80. The Defendants' actions and/or inactions and/or conduct, as more fully set forth at length *supra*, constituted an intentional exercise of force which gave Plaintiff reason to fear or expect immediate bodily harm or injury in more or more of the following respects:

   A) Confinement with handcuffs and/or within the police car and/or the police station and/or the Lycoming County jail; and/or

   B) The reasonable fear of being infected by the Covid 19 virus in the Lycoming County jail, during the initial virulent and panicked stages of the pandemic.

81. The conduct as set forth *supra* was a substantial factor and factual cause and/or increased the risk of harm to Plaintiff, rendering this Defendant liable for the injuries and damages claimed herein, and Plaintiff demands a jury for trial of the same.

82. As a direct and proximate result of the Defendant's conduct, Plaintiff herein suffered and/or continues to suffer from pain, suffering, agony, anxiety, mental anguish, depression, disability, mental disturbances, extreme emotional distress, embarrassment, humiliation, fear and/or post traumatic stress disorder, and Plaintiff demands a jury for trial of the same.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, in an amount in excess of $1,000,000 (One Million Dollars), plus such other relief as this Honorable Court deems appropriate.

## COUNT VII
## BATTERY
## Plaintiff v. Defendant Bolt

83. Plaintiff hereby incorporates averments 1 through 82 as though fully set forth herein at length.

84. Defendant Bolt's actions and conduct, as further set forth at length *supra*, constituted physical contact intended to harm another when he handcuffed, detained and/or arrested the Plaintiff.

85. The conduct set forth above was a substantial factor and factual cause or increased the risk of harm to the Plaintiff, rendering this Defendant Bolt liable for the injuries and damages claimed herein, and Plaintiff demands a jury for trial of the same.

86. As a direct and proximate result of the Defendant's conduct, Plaintiff herein suffered and/or continues to suffer from pain, suffering, agony, anxiety, mental anguish, depression, disability, mental disturbances, extreme emotional distress, embarrassment, humiliation, fear and/or post traumatic stress disorder, and Plaintiff demands a jury for trial of the same.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, in an amount in excess of $1,000,000 (One Million Dollars), plus such other relief as this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Trial by a jury of eight (8) persons is demanded as to all issues.

                                Respectfully Submitted,

                                LAW OFFICE OF J. CONOR CORCORAN, P.C.

Date:   July 25, 2022

                                _____
                                J. CONOR CORCORAN
                                Attorney for Plaintiff